JAN 23 PM 2: ??

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

**AEM, INC., d/b/a MIRABILIS HR,**
**AQMI STRATEGY CORPORATION,**
**HOTH HOLDINGS, LLC,**
**MIRABILIS VENTURES, INC.,**
**PRESIDION SOLUTIONS, INC.,**
**PROFESSIONAL BENEFIT SOLUTIONS,**
 **d/b/a PRESIDION SOLUTIONS VII, INC.**

Case No. 6:08-cr-231-Orl-28KRS
18 U.S.C. § 371
18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

## SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE
## (CONSPIRACY)

### A. INTRODUCTION

At all times material to this Indictment:

1.      Presidion Corporation was a publicly-traded corporation incorporated in Florida with offices located in Troy, Michigan, which was later de-listed. Presidion Corporation itself conducted no business activity.

2.      Defendant **PRESIDION SOLUTIONS, INC. (PRESIDION SOLUTIONS)** was a Florida corporation with offices located in Troy, Michigan; Orlando, Florida; Jupiter, Florida; and Miami, Florida. Frank L. Amodeo (Amodeo) controlled defendant **PRESIDION SOLUTIONS** from on or about June 2005 until July 2007. Defendant **PRESIDION SOLUTIONS** was a holding company for several professional employee organizations (PEOs) that provided comprehensive and integrated resource

management services, including payroll services, to small and medium-sized companies. Over ninety-five percent of defendant **PRESIDION SOLUTIONS'** clients were based in Florida. Defendant **PRESIDION SOLUTIONS** was a wholly owned subsidiary of Presidion Corporation.

      3.      Defendant **MIRABILIS VENTURES, INC. (MIRABILIS)** was a Nevada Corporation, with offices located in Orlando, Florida. Defendant **MIRABILIS** had a number of presidents from its inception to April 2008; however, Amodeo, although not an officer or director, controlled defendant **MIRABILIS** from approximately the summer of 2004, but no later than January 2005 until April 2008.

      4.      From 2001 through 2005, defendant **PRESIDION SOLUTIONS** acquired 7 PEOs, which made up defendant **PRESIDION SOLUTIONS'** "book of business", i.e., the contracts defendant **PRESIDION SOLUTIONS** had with its clients. In 2001, defendant **PRESIDION SOLUTIONS** acquired Sunshine Staff Leasing, Sunshine Companies I, Sunshine Companies II, Sunshine Companies III, and Sunshine Companies IV (herein after referred to as the Sunshine Companies). Subsequently, the Sunshine Companies did business as Presidion Solutions I, Presidion Solutions II, Presidion Solutions III, Presidion Solutions IV, and Presidion Solutions V, respectively.

      5.      Defendant **PRESIDION SOLUTIONS** acquired Paradyme, Inc. (Paradyme) doing business as Presidion Solutions VI, in 2002 and acquired defendant **PROFESSIONAL BENEFIT SOLUTIONS, d/b/a PRESIDION SOLUTIONS VII, INC. (PBS)**, in 2005. With the acquisitions of the Sunshine Companies, Paradyme and defendant **PBS**, defendant **PRESIDION SOLUTIONS** had at least 2,200 clients and approximately 29,700 worksite employees.

6.      Defendant **PRESIDION SOLUTIONS** engaged in "SUTA dumping," which involves "transferring" the "book of business" from one PEO subsidiary to another, depending on the State Unemployment Tax Authority (SUTA) rates for the PEO subsidiaries.  The SUTA rates changed on a yearly basis, so depending on which PEO subsidiary had the best SUTA rate for the year, the PEO subsidiary with the lowest SUTA rate would report the payroll wages and the payroll taxes.  The bulk of defendant **PRESIDION SOLUTIONS'** "book of business" was reported by defendant **PBS** during 2005 and 2006.

7.      The clients of the PEOs entered into contracts, or service agreements, with defendant **PRESIDION SOLUTIONS** (or its predecessors).  Initially, the clients entered into the agreement with the Sunshine Companies; then, later on, the clients either entered into an agreement with Paradyme or defendant **PBS**.

8.      According to the contracts signed by the clients when defendant **PRESIDION SOLUTIONS** (or its predecessors) started providing services to the clients, defendant **PRESIDION SOLUTIONS** became the co-employer of its clients' employees and assumed the liabilities and responsibilities for reporting and paying over to the Internal Revenue Service the payroll wages and the payroll taxes of the worksite employees.

9.      At the end of a client's payroll cycle, a client would e-mail, fax, or mail the number of hours worked by the worksite employees to defendant **PRESIDION SOLUTIONS**.  After receiving the information, defendant **PRESIDION SOLUTIONS** computed the amount of Federal Insurance Contributions Act (FICA) taxes, Medicare, withholding taxes, workers' compensation insurance and 401K contributions to be

3

added to the clients' bill, along with defendant **PRESIDION SOLUTIONS'** administrative fee. Defendant **PRESIDION SOLUTIONS** would then e-mail, fax, or mail this information back to the clients, who would either direct debit, mail, or wire the funds to defendant **PRESIDION SOLUTIONS**.

10. Defendant **AEM, INC., d/b/a MIRABILIS HR (AEM)**, was a Florida corporation with offices located in Orlando, Florida. During 2006, Amodeo and his co-conspirators used defendant **AEM**, a PEO that they controlled, to "manage" defendant **PRESIDION SOLUTIONS'** book of business. The funds intended to pay the payroll taxes for defendant **PBS** were held by defendant **AEM** in an account along with funds to pay the payroll taxes for defendant **AEM**, which supposedly had its own book of business. Instead of paying the payroll taxes for defendant **PBS**, Amodeo and the co-conspirators transferred funds from defendant **AEM's** account to an account of defendant **PRESIDION SOLUTIONS**, which was set-up to conceal the true source of the funds, or the funds were transferred directly to companies controlled by Amodeo and his co-conspirators in order to fund the business operations for those companies.

11. Defendant **AQMI STRATEGY CORPORATION (AQMI)** was a Florida corporation with offices located in Orlando, Florida. Defendant **AQMI** was controlled by Amodeo.

12. Defendant **HOTH HOLDINGS, LLC (HOTH)** was a Nevada Limited Liability Corporation with offices located in Orlando, Florida. **HOTH** was a subsidiary of **MIRABILIS** and was created by Amodeo and his co-conspirators as a nominee to purchase real estate in Richmond, Virginia.

4

13.     There were a number of companies, including defendants **MIRABILIS,**
**AEM, AQMI, HOTH, PRESIDION SOLUTIONS, PBS,** and other affiliates of defendant
**MIRABILIS**, which were controlled by Amodeo and the other co-conspirators, which
played a part in the tax fraud and wire fraud scheme.  The companies involved in the
scheme included defendants **AEM, AQMI, HOTH, MIRABILIS, PRESIDION**
**SOLUTIONS, PBS**, Common Paymaster Corporation (Common Paymaster), Nexia
Strategy Corporation (Nexia), Presidion Corporation, Quantum Delta Enterprises, Inc.,
d/b/a Siren Resources, Inc. (Quantum), Wellington Capital Group, Inc. (Wellington), and
various other companies.

### B. THE AGREEMENT

14.     Between approximately August 2004, and continuing thereafter through in
or about February 2007, in Orange County, Florida, in the Middle District of Florida, and
elsewhere,

**AEM, INC., d/b/a MIRABILIS HR,**
**AQMI STRATEGY CORPORATION,**
**HOTH HOLDINGS LLC,**
**MIRABILIS VENTURES, INC.,**
**PRESIDION SOLUTIONS, INC., and**
**PROFESSIONAL BENEFIT SOLUTIONS,**
**d/b/a PRESIDION SOLUTIONS VII, INC.,**

the defendants herein, did knowingly and willfully combine, conspire, confederate and
agree, with others both known and unknown to the Grand Jury, to defraud the United
States for the purpose of impeding, impairing, obstructing, and defeating the lawful
Government functions of the Internal Revenue Service of the Treasury Department in
the ascertainment, computation, assessment, and collection of the revenue: to wit,
payroll taxes, and to commit offenses against the United States, to-wit: Wire Fraud, in

5

violation of Title 18, United States Code, Section 1343, and Failure to Remit Payroll

Taxes, in violation of Title 26, United States Code, Section 7202.

## C. MANNER AND MEANS OF THE CONSPIRACY

15.    The substance of the conspiracy included, among other things, the

following:

a.    It was a part of the conspiracy that Amodeo, along with co-conspirators,

would control a web of one public and several private companies, including multiple

PEOs.

b.    It was a further part of the conspiracy that Amodeo and co-conspirators

would attempt to absolve themselves of the responsibility for existing payroll tax

liabilities and to divert payroll tax funds paid by the PEO clients to the PEOs that

Amodeo and co-conspirators controlled.

c.    It was a further part of the conspiracy that Amodeo and co-conspirators

would purchase assets in Amodeo's name and/or in the names of co-conspirators

and/or in the names of nominees, including real estate, airplanes, vehicles, and other

companies.

d.    It was a further part of the conspiracy that, even though Amodeo was not

to be listed as a director, officer or shareholder for some of the companies involved in

the scheme, Amodeo and his co-conspirators directed the business activities of all the

companies involved in the scheme.

e.    It was a further part of the conspiracy that Amodeo would use payroll tax

funds received by defendant **AQMI** from defendant **PRESIDION SOLUTIONS** in order

to make the purchase of the Sunshine Companies, knowing at the time of the purchase

6

that the Sunshine Companies had existing payroll tax liabilities.  Amodeo's purchase of

the Sunshine Companies did not include defendant **PRESIDION SOLUTIONS'** "book of

business," which was transferred to Paradyme.

      f.      It was a further part of the conspiracy that defendant **AQMI** would provide

a line of credit in the amount of approximately $3,000,000.00 to Wellington, a company

controlled by Amodeo.

      g.      It was a further part of the conspiracy that the principals of defendant

**PRESIDION SOLUTIONS** would provide defendant **AQMI** the money to fund the Line of

Credit which was then used to purchase the Sunshine Companies.

      h.      It was a further part of the conspiracy that Amodeo would gain control of

defendant **PRESIDION SOLUTIONS'** remaining PEO subsidiaries, i.e., Paradyme and

defendant **PBS**.

      I.      It was a further part of the conspiracy that after gaining control of

Paradyme and defendant **PBS**, Amodeo would direct the funds collected from

defendant **PRESIDION SOLUTIONS'** clients, which were represented to the clients as

funds to be used to pay the payroll taxes, not be paid over to the Internal Revenue

Service during 2005 and 2006.

      j.      It was a further part of the conspiracy that Amodeo would cause to be

opened at First Southern Bank an account in the name of defendant **PRESIDION**

**SOLUTIONS**, titled as the "Reserve account" (Reserve account), the purpose of which

was to conceal the source of the diversion of the funds from the employees, Internal

Revenue Service, regulators and others.

7

k.      It was a further part of the conspiracy that the Reserve account would receive funds from a Bank of America account in the name of defendant **PRESIDION SOLUTIONS**, titled as the "Ultimate Master account" (Ultimate Master account).

l.      It was a further part of the conspiracy that Amodeo would direct funds that should have been used to pay the payroll taxes for defendant **PBS** be transferred from the Ultimate Master account, which held the payroll tax funds, to the Reserve account.

m.      It was a further part of the conspiracy that the funds would be dispersed at Amodeo's direction and for his benefit and the benefit of co-conspirators.

n.      It was a further part of the conspiracy that Amodeo and one or more of the co-conspirators would knowingly fail to remit to the Internal Revenue Service payroll taxes, including FICA and withholding taxes (also referred to as trust fund taxes).

o.      It was a further part of the conspiracy that Amodeo and other co-conspirators would attempt to conceal defendant **PRESIDION SOLUTIONS'** "book of business" and the responsibility for the remittance of defendant **PBS'** payroll taxes to the Internal Revenue Service by entering into a number of management/assignment agreements between companies controlled by Amodeo.

p.      It was a further part of the conspiracy that defendant **MIRABILIS**, a private equity fund, would be used as the umbrella company used in the tax fraud and wire fraud scheme and would be controlled by Amodeo and other co-conspirators.

q.      It was a further part of the conspiracy that defendant **MIRABILIS** would buy distressed businesses and would eventually evolve into a business that specialized in acquisitions of and mergers with other businesses in various industries. By late 2006, defendant **MIRABILIS** had grown to be a conglomerate of approximately 70 companies

8

involved in various industries, including consulting, corporate security, employee leasing, and hotel ownership.

r.     It was a further part of the conspiracy that Amodeo would direct that funds be directly transferred from a Bank of America account in the name of defendant **AEM** to companies controlled by Amodeo and the other co-conspirators, such as Common Paymaster and defendant **MIRABILIS**, to fund the companies' operations and to acquire other companies.

s.     It was a further part of the conspiracy that during 2005 and 2006, Amodeo and co-conspirators would use diverted payroll tax funds to fund operations and acquire numerous companies under the defendant **MIRABILIS** "umbrella."

t.     It was a further part of the conspiracy that Amodeo and co-conspirators would use diverted payroll tax funds to acquire real estate in Richmond, Virginia and use defendant **HOTH** as a nominee to purchase the property.

u.     It was a further part of the conspiracy that Amodeo and co-conspirators would provide false information or fail to provide all material information to Internal Revenue Service revenue officers attempting to collect unpaid payroll taxes from PEOs controlled by Amodeo and co-conspirators.

## D. OVERT ACTS

16.     In furtherance of the conspiracy, and to effectuate its objectives, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

a.     On or about October 18, 2004, Amodeo, as the president of defendant **AQMI**, signed a consulting agreement with defendant **PRESIDION SOLUTIONS**. The

9

consulting agreement called for Amodeo to provide tax advice to defendant **PRESIDION SOLUTIONS** for a non-refundable fee in the amount of $150,000.00 and an additional fee of 25% of any tax savings of the company's current payroll tax liability, which at the time, was at least $13,000,000.00 (including taxes, penalties, and interest).

      b.      On or about October 18, 2004, Amodeo took out a line of credit in the amount of $3,000,000.00 from defendant **AQMI**, so he could justify using funds paid to defendant **AQMI** for his benefit.

      c.      On or about December 1, 2004, defendant **AQMI** provided a line of credit in the amount of approximately $3,000,000.00 to Wellington, a company controlled by Amodeo.

      d.      On or about December 8, 2004, Amodeo, through Wellington, agreed to purchase the Sunshine Companies for approximately $500,000.00. Amodeo used the line of credit Wellington had with defendant **AQMI** to provide funds to Wellington to complete the purchase of the Sunshine Companies.

      e.      On or about December 8, 2004, defendant **PRESIDION SOLUTIONS** provided Amodeo with a limited power of attorney to make payroll tax payments for the Sunshine Companies.

      f.      On or about December 17, 2004, defendant **PRESIDION SOLUTIONS** transferred approximately $1,284,986.58 to defendant **AQMI**, per the limited power of attorney described in 15e above, which then transferred approximately $1,000,000.00 to Wellington per the line of credit described in 15c above. Subsequently, Wellington would purchase multiple cashier's checks to complete the purchase of the Sunshine

10

Companies.  The funds transferred on this date to defendant **AQMI** were actually funds intended to be used as payroll taxes for the Sunshine Companies.

      g.      On or about December 30, 2004, a co-conspirator, as president of Paradyme, entered into an assignment and assumption agreement with the Sunshine Companies whereby the Sunshine Companies transferred to Paradyme the "book of business."

      h.      On or about February 16, 2005, defendant **PRESIDION SOLUTIONS** "assigns, transfers, sets over and delivers to" the Sunshine Companies all of defendant **PRESIDION SOLUTIONS'** "right, title and interest" in the consulting agreement dated October 14, 2004, between defendant **PRESIDION SOLUTIONS** and defendant **AQMI**.

      I.      On or about April 29, 2005, defendant **MIRABILIS** purchased defendant **AEM** for approximately $125,000.00.  At the time of the purchase, defendant **AEM** was a PEO shell.  Amodeo and the other co-conspirators intended to transfer defendant **PRESIDION SOLUTIONS'** "book of business" to defendant **AEM** because: (i) defendant **AEM** had a better SUTA rate than Paradyme and defendant **PBS**, and (ii) because defendant **PRESIDION SOLUTIONS'** name was tainted in the PEO industry.

      j.      On or about May 1, 2005, Presidion Corporation entered into a consultant agreement with Nexia that called for Nexia to provide consulting services to Presidion Corporation.  A co-conspirator signed the agreement on behalf of Presidion Corporation and Amodeo signed the agreement on behalf of Nexia.

      k.      On or about May 16, 2005, a co-conspirator, as president of Paradyme, entered into an amendment to the December 30, 2004 agreement.  The amendment detailed that a promissory note in the amount of $12,241,475.65, the value of the "book

of business," would be written by Paradyme for the benefit of the Sunshine Companies. This agreement indicated that the promissory note between the Sunshine Companies and Paradyme should be effective as of December 31, 2004.

l.     On or about May 24, 2005, two co-conspirators, as majority shareholders in Presidion Corporation, gave Amodeo power of attorney to vote their shares.

m.     On or about May 31, 2005, the Sunshine Companies, which were then controlled by Amodeo via Wellington, assigned the Paradyme promissory note dated December 31, 2004, in the amount $12,241,475.65 to defendant **MIRABILIS**, a company controlled by Amodeo. Amodeo signed the assignment of the promissory note on behalf of the Sunshine Companies. A co-conspirator, a member of the Board of Directors for defendant **MIRABILIS** and for Presidion Corporation, signed the assignment on behalf of defendant **MIRABILIS**.

n.     On or about June 6, 2005, another co-conspirator, a member of the Board of Directors for defendant **MIRABILIS** and for Presidion Corporation, also gave power of attorney to Amodeo for his shares of Presidion Corporation stock. This power of attorney and the two powers of attorney referred to in paragraph 15l above, allowed Amodeo to vote as the majority shareholder of Presidion Corporation.

o.     On or about June 8, 2005, the Board of Directors for Presidion Corporation met and resolved the following:

            i.     Amodeo was appointed interim Vice President of Presidion Corporation;

            ii.     Amodeo was added to all Presidion Corporation accounts at Bank of America;

12

iii.    any payments, purchase orders and contracts made by the
company, with the exception of net payroll checks, shall require
Amodeo's written authorization; and

iv.    Presidion Corporation would open new banking accounts at First
Southern Bank.

p.    On or about June 8, 2005, Amodeo opened the Reserve account based
upon the authorization provided by the resolution passed by the Board of Directors for
Presidion Corporation.  This account received funds from the Ultimate Master account,
which collected funds meant to pay payroll tax funds.

q.    On or about June 27, 2005, Amodeo, as president of the Sunshine
Companies, directed defendant **MIRABILIS**, a company controlled by Amodeo, to direct
all payments under the May 31, 2005, assignment to the Internal Revenue Service on
behalf of the Sunshine Companies.

r.    Beginning in June 2005 and continuing through December 2005, a tax
director for defendant **PRESIDION SOLUTIONS** notified a co-conspirator daily via
e-mail about the expenses and payables for defendant **PRESIDION SOLUTIONS**,
which included the payroll taxes for Paradyme and for defendant **PBS**.  After the
co-conspirator received the daily e-mail from the tax director, the co-conspirator
forwarded the tax director's original e-mail to Amodeo.  Amodeo's administrative
assistant replied to the co-conspirator's e-mail after the administrative assistant received
directions on what to pay from Amodeo, including whether to pay the payroll taxes for
Paradyme and for defendant **PBS**.

s.    In or about summer 2005, the Sunshine Companies were dissolved.

13

t.      On or about July 28, 2005, Wellington purchased defendant **PRESIDION SOLUTIONS**, including Paradyme and defendant **PBS**, for approximately $100,000.00. This purchase was made to avoid the loss of defendant **PRESIDION SOLUTIONS'** workers' compensation insurance coverage.

u.      On or about July 28, 2005, defendant **AEM** signed a contract for management services with defendant **PRESIDION SOLUTIONS** where defendant **PRESIDION SOLUTIONS** agreed to let defendant **AEM** manage defendant **PRESIDION SOLUTIONS'** "book of business" for a 2% fee.  According to the contract, defendant **AEM** was to "comply with applicable federal, state, and local law, rules, and regulations, codes, statutes, ordinances and orders of any governmental or regulatory authority."

v.      On or about July 28, 2005, defendants **AEM** and **PBS** entered into an assignment agreement, which provided that defendant **AEM** would have "right, title and interest to the Client Service Agreement/Subscriber Agreements (the defendant **PRESIDION SOLUTIONS'** "book of business"), but no liabilities (payroll taxes)."

w.      On August 31, 2005, defendants **PRESIDION SOLUTIONS** and **AEM** amended the contract for management services entered into on July 28, 2005, which provided that defendant **AEM** would continue to manage the defendant **PRESIDION SOLUTIONS'** "book of business" until December 31, 2005.

x.      On or about September 8, 2005, defendants **AEM** and **PBS** signed an amendment to the assignment agreement dated July 28, 2005.  A co-conspirator, representing defendant **PBS**, and another co-conspirator, representing defendant **AEM**, signed the amendment which extended the time frame during which defendant **AEM**

managed defendant **PRESIDION SOLUTIONS'** "book of business" to December 31, 2005.

     y.     On or about October 3, 2005, the Board of Directors for Wellington, which consisted only of Amodeo, authorized a co-conspirator, as president of defendant **PRESIDION SOLUTIONS**, which had been purchased by Wellington, to enter into an indemnity agreement with defendant **MIRABILIS**, a company controlled by Amodeo. Per the indemnity agreement dated October 4, 2005, defendant **MIRABILIS** became responsible for defendant **PRESIDION SOLUTIONS'** liabilities, including any payroll tax liabilities, and defendant **PRESIDION SOLUTIONS** was supposed to pay defendant **MIRABILIS** $50,000,000.00 by the end of the year.

     z.     On or about December 13, 2005, defendant **MIRABILIS** transferred the October 4, 2005 indemnity agreement to Titanium Consulting Services, Inc. (name subsequently changed to Titanium Technologies, Inc.).

     aa.     On or about December 31, 2005, defendants **AEM** and **PBS** entered into a second amendment to the assignment agreement dated July 28, 2005.

     bb.     From December 2004 through April 2008, approximately $3,200,000.00 had been paid towards the Sunshine Companies' payroll tax liabilities, which to date total at least $38,000,000.00 (including taxes, penalties and interest).

     cc.     From on or about June 10, 2005 until on or about December 31, 2005, Amodeo, who controlled and directed all the banking activity of the Reserve account, caused to be transferred approximately $64,600,000.00 to the Reserve account from the Ultimate Master account.  The funds were used by Amodeo to purchase, fund and grow additional businesses, such as defendants **AQMI** and **MIRABILIS**, Nexia,

15

Quantum, and Wellington. Specifically, approximately $34,000,000.00 was transferred from the Reserve account to defendant **MIRABILIS**, although that money was supposed to be used for the payment of payroll taxes for defendant **PBS**.

dd.     In December 2005, defendant **MIRABILIS** created defendant **HOTH** solely for the purpose of holding the Richmond, Virginia property.

ee.     At the beginning of 2006, a Bank of America account in the name of defendant **AEM**, titled as the "Depository account" (Depository account), was used to collect funds from the PEO clients. The funds from the Depository account were swept to a Bank of America account in the name of defendant **AEM** titled as the "Master account" (Master account). During the year, the funds from the PEO clients intended to pay the payroll taxes for defendant **PBS** were deposited into the Master account, but were not used for that purpose.

ff.     In February 2006, Amodeo faxed a letter to an Internal Revenue Service revenue officer which stated that he was "creating new strategies that will give him control of the operating subsidiaries. As a result of this process, I have been able to disentangle the assets from a web of claims, encumbrances, and security interests that were impeding both of us from recovering monies owed to Internal Revenue Service."

gg.     On or about April 1, 2006, defendant **AEM**, Paradyme and Wellington entered into a transfer agreement that stated that Paradyme would assign, sell, and transfer to defendant **AEM** all contracts that Paradyme had with clients. A co-conspirator signed the agreement on behalf of defendant **AEM** and another co-conspirator signed on behalf of Paradyme. A third co-conspirator signed the transfer agreement on behalf of Wellington.

hh.     On or about May 9, 2006, defendant **AEM** rescinded the assignment agreements between defendants **AEM** and **PBS**.

ii.     On May 16, 2006, a member of defendant **MIRABILIS'** board of directors signed a contract to purchase the Richmond, Virginia property.

jj.     On May 16 and May 17, 2006, three wire transfers totaling $1,540,000.00 were wired to Richmond, Virginia to complete the purchase of the real estate.

kk.     On or about June 26, 2006, a co-conspirator advised an Internal Revenue Service revenue officer that payroll tax money not paid to the Internal Revenue Service was used to purchase two other companies, when, in fact, the money was used to purchase, among other things, several companies, cars, a plane, and real estate.

ll.     On or about July 1, 2006, a co-conspirator, representing defendant **AEM**, indicated to another co-conspirator, representing defendant **PBS**, that defendant **AEM** "would like to extend the services which **AEM** is currently providing to PRESIDION SOLUTIONS VII." The co-conspirator representing defendant **AEM** also stated that defendant **AEM** would remit to the Internal Revenue Service the payroll taxes for defendant **PBS**.

mm.     During the year 2006, the funds intended to pay the payroll taxes for defendant **PBS** were held in the Master account along with funds to pay the payroll taxes for defendant **AEM**, which had its own minuscule "book of business." Instead of paying the payroll taxes for defendant **PBS**, Amodeo directed funds transferred from the Master account to a SunTrust Bank account in the name of defendant **PRESIDION SOLUTIONS**, titled as the "Capital account" (Capital account). During the year 2006, approximately $23,750,000.00 was transferred from the Master account to the Capital

17

account.  Amodeo controlled and directed all the banking activity of the Capital account. After the funds were transferred to the Capital account, the funds were used by Amodeo and co-conspirators to purchase, fund and grow additional businesses, such as defendants **AQMI** and **MIRABILIS** and Quantum, and to purchase assets in the name of nominees, such as the purchase of property in the State of Virginia titled in the name of defendant **HOTH**.

nn.     Amodeo and co-conspirators knowingly failed to remit to the Internal Revenue Service payroll taxes totaling approximately $200,098,423.32, including approximately $157,758,346.76 in FICA and withholding taxes (also referred to as trust fund taxes), for Sunshine Companies III (4th quarter, 2004); Sunshine Staff Leasing (4th quarter, 2004); and defendant **PBS** (2nd, 3rd, and 4th quarters, 2005; 1st, 2nd, 3rd, and 4th quarters, 2006).

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SEVENTEEN
### (WIRE FRAUD)

17.     Count One, paragraphs One through Thirteen, are hereby re-alleged and incorporated by reference herein.

### A.  THE SCHEME TO DEFRAUD

18.     From a date unknown, possibly as early as August 2004, but no later than in or about December 2004, and continuing to in or about February 2007, in Orlando, Orange County, Florida, in the Middle District of Florida, and elsewhere,

18

**AEM, INC., d/b/a MIRABILIS HR,**
**AQMI STRATEGY CORPORATION,**
**MIRABILIS VENTURES, INC.,**
**PRESIDION SOLUTIONS, INC., and**
**PROFESSIONAL BENEFIT SOLUTIONS,**
**d/b/a PRESIDION SOLUTIONS VII, INC.,**

the defendants herein, knowingly devised and executed a scheme and artifice to

defraud clients of PEOs controlled by Frank L. Amodeo and co-conspirators of money

and property, and to obtain money and property of said clients, by means of false and

fraudulent pretenses, representations, and promises.

**B. <u>MANNER AND MEANS</u>**

19.     The substance of the scheme and artifice to defraud and to obtain money

and property by false pretenses, representations and promises included, among other

things, the manner and means contained in Count One, paragraph Fifteen, and are

incorporated by reference herein.

**C. <u>THE WIRE COMMUNICATIONS</u>**

20.     On or about the following dates, in Orange County, Florida, in the Middle

District of Florida, and elsewhere,

**AEM, INC., d/b/a MIRABILIS HR,**
**AQMI STRATEGY CORPORATION,**
**MIRABILIS VENTURES, INC.,**
**PRESIDION SOLUTIONS, INC., and**
**PROFESSIONAL BENEFIT SOLUTIONS,**
**d/b/a PRESIDION SOLUTIONS VII, INC.,**

the defendants herein, having devised and intending to devise, and for obtaining money

and property by means of false and fraudulent pretenses, representations, and

promises, transmitted and caused to be transmitted a wire transfer of money by means

of wire communications in interstate commerce signs, signals, pictures and sounds for

the purpose of executing such scheme to defraud and injure said clients of the PEOs

controlled by defendant.

| Count | Date | Point of Origin | Point of Reception | Description |
|---|---|---|---|---|
| 2 | 12/13/04 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | AQMI Strategy Corp., Regions Bank, f/k/a AmSouth Bank, Acct No. 55292976 | Wire Transfer of $1,410,375.52 |
| 3 | 12/20/04 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | AQMI Strategy Corp., Regions Bank, f/k/a AmSouth Bank, Acct No. 55292976 | Wire Transfer of $1,284,986.58 |
| 4 | 6/10/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,000,000 |
| 5 | 6/17/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,000,000 |
| 6 | 7/22/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 7 | 7/29/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 8 | 11/02/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 9 | 11/28/05 | Presidion Solutions, Inc., Bank of America, Acct No. 5481578978 | Presidion Solutions, Inc., First Southern Bank, Acct No. 2058256506 | Wire Transfer of $1,500,000 |
| 10 | 1/9/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Nexia Strategy Corp., Bank of America, Acct No. 5502778055 | Wire Transfer of $1,000,000 |

| Count | Date | Point of Origin | Point of Reception | Description |
|-------|------|-----------------|--------------------|-------------|
| 11 | 2/14/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $2,000,000 |
| 12 | 3/17/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $1,300,000 |
| 13 | 4/21/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Presidion Solutions, Inc., SunTrust Bank, Acct No. 100041146787 | Wire Transfer of $700,000 |
| 14 | 5/15/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Titanium Technologies, SunTrust Bank, Acct No. 1000046738380 | Wire Transfer of $1,500,000 |
| 15 | 5/19/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Wellington Capital, Mercantile Bank, Acct No. 7600303414 | Wire Transfer of $500,000 |
| 16 | 7/28/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Mirabilis Ventures, Inc., Bank of America, Acct No. 5560763125 | Wire Transfer of $250,000 |
| 17 | 12/11/06 | AEM, Inc., d/b/a Mirabilis HR, Bank of America, Acct No. 5561911523 | Tenshi Leasing, Inc., Bank of America, Acct. No. 5560769378 | Wire Transfer of $500,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS EIGHTEEN THROUGH TWENTY
### (WIRE FRAUD)

21.    Count One, paragraphs One through Thirteen, are hereby re-alleged and incorporated by reference herein.

## A. THE SCHEME TO DEFRAUD

22.     From approximately May 2006, and continuing to in or about February 2007, in Orlando, Orange County, Florida, in the Middle District of Florida, and elsewhere,

### HOTH HOLDINGS, LLC,

the defendant herein, knowingly devised and executed a scheme and artifice to defraud clients of PEOs controlled by Frank L. Amodeo and co-conspirators of money and property, and to obtain money and property of said clients, by means of false and fraudulent pretenses, representations, and promises.

## B. MANNER AND MEANS

23.     The substance of the scheme and artifice to defraud and to obtain money and property by false pretenses, representations and promises included, among other things, the manner and means contained in Count One, paragraph Fifteen, and are incorporated by reference herein.

## C. THE WIRE COMMUNICATIONS

24.     On or about the following dates, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

### HOTH HOLDINGS, LLC,

the defendant herein, having devised and intending to devise, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted a wire transfer of money by means of wire communications in interstate commerce signs, signals, pictures and sounds for the

22

purpose of executing such scheme to defraud and injure said clients of the PEOs
controlled by defendant.

| 18 | 5/16/06 | Mirabilis Ventures, Inc., SunTrust Bank Acct No. 1000037724100 | LeClair Ryan Trust | Wire Transfer of $140,000 |
|----|---------|------------------------------------------------------------------|--------------------|----------------------------|
| 19 | 5/16/06 | Mirabilis Ventures, Inc., SunTrust Bank, Acct No. 1000037724100 | LeClair Ryan Trust | Wire Transfer of $500,000 |
| 20 | 5/17/06 | Mirabilis Ventures, Inc., SunTrust Bank, Acct No. 1000037724100 | LeClair Ryan Trust | Wire Transfer of $900,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE

1.     The allegations contained in Counts One through Twenty of this Indictment
are hereby realleged and incorporated by reference for the purpose of alleging forfeitures
pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and
Title 28, United States Code, Section 2461(c).

2.     From their engagement in the violations alleged in Counts One through
Twenty of this Indictment, the defendants

**AEM, INC., d/b/a MIRABILIS HR,**
**AQMI STRATEGY CORPORATION,**
**HOTH HOLDINGS LLC,**
**MIRABILIS VENTURES, INC.,**
**PRESIDION SOLUTIONS, INC., and**
**PROFESSIONAL BENEFIT SOLUTIONS,**
**d/b/a PRESIDION SOLUTIONS VII, INC.,**

23

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all of their interest in any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

3.    The specific property to be forfeited includes, but is not limited to:

    a.    A forfeiture money judgment in the amount of $200,098,423.32, which constitutes proceeds obtained directly or indirectly as a result of the conspiracy to commit wire fraud charged in Count One, and/or the wire fraud charged in Counts Two through Twenty. The net proceeds of any asset forfeited as property constituting or traceable to proceeds of the offenses charged herein shall be credited in partial satisfaction of the money judgment.

    b.    The real property, including all improvements thereon and appurtenances thereto, located at:

        (1)    614 Lake Avenue, Orlando, Florida;

        (2)    709 Euclid Avenue, Orlando, Florida;

        (3)    1159 Delaney Avenue, Orlando, Florida;

        (4)    3801 Carolina Avenue, Richmond, Virginia;

        (5)    4905 Research Drive, Huntsville, Alabama;

        (6)    102 West Whiting Street, Tampa, Florida; and

(7)     The proceeds of the sale of 509 Riverfront Parkway,

Chattanooga, Tennessee, currently held in the bankruptcy

estate of Winpar Hospitality Chattanooga, LLC, Case No.

07-11908, U.S. Bank. Court, E.D. Tenn.

c.     The following vehicles:

(1)     2006 Black Harley Davidson Motorcycle,
VIN # 1HD1BWB156Y077592;

(2)     2006 Mercedes Benz CLS 500C Coupe,
VIN # WDDDJ75X46A032858; and

(3)     2006 BMW 750Li,
VIN # WBAHN83536DT30059

(4)     2006 Mercedes Benz CLS 55AMG
VIN # WDDDJ76X66A055945

d.     Gates Learjet Model 25D, Aircraft Number 4488W.

e.     The following promissory notes:

(1)     A promissory note in the amount of $3,500,000.00 dated on

or about May 7, 2007 between Wellington Capital and

Worker's Temporary Staffing, Inc., including payments of

$63,000.00 per month; and

(2)     A promissory note in the amount of $5,500,000.00 dated on

or about May 27, 2007 between Mirabilis Ventures, Inc. and

Conrad D. Eigenmann, Jr., including semi-annual payments

of at least $100,000.00.

f.   The following seized funds:

(1)   $253,487.45 in proceeds seized from the trust account of the law firm of Balch Bingham LLP;

(2)   $101,393.86 in proceeds seized from the trust account of the law firm of Shutts & Bowen;

(3)   $42,419.72 in proceeds seized from the trust account of the law firm of Mateer and Harbert;

(4)   $100,000.00 in proceeds seized from the trust account of the law firm of Maher, Guily, Maher PA;

(5)   $105,922.96 in proceeds seized from the trust account of the law firm of Martin, Pringle, Oliver, Wallace, & Baur LLP;

(6)   $50,000.00 in proceeds seized from the trust account of the law firm of Bieser, Greer & Landis LLP;

(7)   $8,518.30 in proceeds seized from the trust account of the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist PA;

(8)   $25,000.00 in proceeds seized from the trust account of the law firm of Valenti, Hanley & Robinson PLLC;

(9)   $10,000.00 in proceeds seized from the trust account of the law firm of Brown, Stone, & Nimeroff LLC;

(10)   $21,900.00 in proceeds seized from the trust account of the law firm of Hunt Rudd PA;

26

(11)  $41,029.54 in proceeds seized from the trust account of the law firm of Ford & Harrison PA;

(12)  $12,528.51 in proceeds seized from the trust account of the law firm of Broad & Cassel;

(13)  $20,754.19 in proceeds seized from the trust account of the law firm of Latham, Shuker, Barker, Eden, & Beaudine LLC;

(14)  $37,629.16 in proceeds seized from the trust account of the law firm of Charles McBurney in Jacksonville, FL; and

(15)  $13,100.99 in proceeds seized from Fifth Third Bank Account No. 7440599020 in the name of Soone Business Development.

g.  The assets of the following corporations, including but not limited to the below listed lawsuits and/or settlements:

Corporations:

AEM, Inc., d/b/a Mirabilis HR,
AQMI Strategy Corporation,
Hoth Holdings, LLC,
Mirabilis Ventures, Inc.,
Nexia Strategy Corporation,
Presidion Solutions, Inc.,
Professional Benefit Solutions,
        d/b/a Presidion Solutions VII, Inc.
Quantum Delta Enterprises, Inc.,
        d/b/a Siren Resources, Inc.,
Titanium Technologies, Inc.,
        f/k/a Titanium Consulting Services, Inc.,

Tenshi Leasing, Inc.
Wellington Capital Group, Inc.

Lawsuits:

| Style of case | Location | Case No. |
|---|---|---|
| Mirabilis Ventures, Inc. v. Jeffrey Reichel | Broward County, Florida | CACE 07011827 |
| Mirabilis Ventures, Inc, and Nexia Strategy Corp. v. Palaxar Group, LLC, et al. | Orange County, Florida | 07-co-13191 (37) |
| Mirabilis Ventures, Inc. v. Forge Capital Partners, LLC, et al. | Orange County, Florida | 07-CA-13828 (33) |
| Mirabilis Ventures, Inc. v. J.C. Services, Inc., et al. | U.S.D.C., M.D. Fl. | 6:06-cv-1957-Orl-22KRS |
| AEM, Inc. d/b/a Mirabilis HR v. Sheryl Okken, Progressive Employer Services, LLC, et al. | Brevard County, Florida | 05-2007-CA-006526 |
| RKT Constructors, Inc. v. Del Kelley and Robi Roberts | Orange County, Florida | 2007-CA-012599-0 |
| Mirabilis Ventures, Inc. v. Stratis Authority, Inc., et al. | Orange County, Florida | 07-ca-13826 (37) |
| Mirabilis Ventures, Inc. v. Premier Servicing, LLC and Robert Konicki | Orange County, Florida | 07-ca-33197 (34) |
| Mirabilis Ventures, Inc. v. Robert Lowder, et al. | Orange County, Florida | 2006-CA-005742-0 |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | U.S.D.C., M.D.FL | 8:07-cv-661-T17EAJ |

| Style of case | Location | Case No. |
|---|---|---|
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Hillsborough County, Florida | DC-07-014201J |
| Berman, Kean & Riguera, P.A. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Broward County, Florida | 07-024968 (21) |
| Anthony T. Sullivan v. AQMI Strategy (Counterclaim) | Orange County, Florida | 07-CA-0015981-0 |
| Paysource, Inc. and Robert Sacco v. Mirabilis Ventures, Amodeo, et al. (Counterclaim) | U.S.D.C., S.D. Ohio | 3:07cv0129 |
| Prime Acquisition Group, LLC v. Ionic Services, Inc., et al. (Counterclaim) | Palm Beach County, Florida | 502007CA02242 |
| Michael Mapes, et al. v. Wellington Capital Group, Inc. | U.S.D.C., D. Neb. | 8:07cv77 |
| Briarcliff Village, LLC v. Mirabilis Ventures, Inc. | Clay County, Missouri | 07CY-CV09414 |
| William Gregory v. Floyd Road v. Mirabilis Ventures, Inc. (Counterclaim) | Hillsborough County, Florida | 07-CA-010780 |
| Coastal Equity Partners, LLC v. Pacific Atlantic Capital Corp., et al. (Counterclaim) | Henrico County, Virginia | CL07-1960 |
| Liberty Property Limited Partnership v. Mirabilis Ventures, Inc., et al. (Counterclaim, settled) | Duval County, Florida | 162007CA003642 |
| Tranmere Rovers Football Club v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Liverpool, England | 7LV30022 |

| Style of case | Location | Case No. |
|---|---|---|
| Mark Lang v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-002929-0 |
| David Chaviers, Norman Chaviers, Kellie Ledbetter and Tom Hancock v. Mirabilis Ventures, Inc. and Frank Amodeo, et al. (Counterclaim, settled) | U.S.D.C., N.D. Ala. | CV-07-0442-cls |
| Carlton Fields v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Hillsborough County, Florida | 07-CC-038145 |
| Brevard County v. RKT Constructors, Inc. (Counterclaim, settled) | Brevard County, Florida | 05-2007-CA-12251 |
| Bellsouth v. RKT Constructors, Inc., et al. (Counterclaim, settled) | Orange County, Florida | 05-2007-CA-9660-0 |
| Dutko Global Advisors LLC v. AQMI Strategy Corporation (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-018164-0 |
| Capital Office Products of Volusia County, Inc., v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Volusia County, Florida | 2007-34950 COCI |
| CDW Corporation, Inc. v. Information Systems, Inc. (Counterclaim, settled) | Cook County, Illinois | 2007-L-002446 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2003-CA-047397 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2006-CA-060518 |

| Style of case | Location | Case No. |
|---|---|---|
| Providence Property & Casualty Insurance Co, et al. v. Paradyme, Inc., d/b/a Presidion Solutions VI (settled) | U.S.D.C., E.D. Tx. | 4:07-CV-202 |
| Presidion Corporation v. Arrow Creek, Inc., et al. | Palm Beach County, Florida | 502006CA001417xxxxMB |

h.      Any and all property of the following bankruptcy estates, including

funds which now constitute or have constituted funds of the estate:

| Style of case | Location | Case No. |
|---|---|---|
| In Re: Winpar Hospitality Chattanooga, LLC. | U. S. Bankruptcy Court, E.D. Tenn. | 07-11908 |
| Sam Hopkins, Trustee v. Todd Pattison and Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, D. Idaho | 08-08005-JDP |
| In Re: Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, M.D. FL | 6:08-bk-04327-KSJ |
| In Re: Hoth Holdings, LLC | U. S. Bankruptcy Court, M.D. FL | 6:08-bk-04328-KSJ |
| In Re: AEM, Inc. | U. S. Bankruptcy Court, M.D. FL | 6:08-bk-04681 |
| In Re: North American Communications | U. S. Bankruptcy Court, D. Utah | 2:07-bk-24900 |

4.      If any of the property described above, as a result of any act or omission of

the defendant:

31

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under

the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title

28, United States Code, Section 2461(c).

A TRUE BILL,

Foreperson

A. BRIAN ALBRITTION
United States Attorney

By:

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

By:

I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division

# UNITED STATES DISTRICT COURT

Middle District of Florida
Orlando Division

## THE UNITED STATES OF AMERICA

vs.

AEM, INC., d/b/a MIRABILIS HR
AQMI STRATEGY CORPORATION
HOTH HOLDINGS, LLC
MIRABILIS VENTURES, INC.
PRESIDION SOLUTIONS, INC.
PROFESSIONAL BENEFIT SOLUTIONS, d/b/a PRESIDION SOLUTIONS VII, INC.

## INDICTMENT

Violations:

18 U.S.C. § 371
18 U.S.C. § 1343

A true bill,

_____
Foreperson

Filed in open court this 21st day of January, A.D. 2009.

_____
Clerk

Bail  $

GPO 863 525